Derek A. Jordan; Tennessee Bar No. 34299 (*pro hac vice*)
BARNES LAW
700 South Flower Street
Suite 1000
Los Angeles, CA 90017
Phone: (310) 510-6211
Email: derekjordan@barneslawllp.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| RON KELLEY, ) | Case No.: _____ |
| ) | |
| Plaintiff, ) | **COMPLAINT FOR DAMAGES** |
| ) | **AND EQUITABLE RELIEF:** |
| v. ) | |
| ) | **1.** VIOLATION OF FREE SPEECH |
| FLAGSTAFF CITY-COCONINO ) | CLAUSE OF THE U.S. |
| COUNTY PUBLIC LIBRARY; HEIDI ) | CONSTITUTION (official capacity); |
| HANSEN; GREG CLIFTON; JEANIE ) | **2.** VIOLATION OF FREE SPEECH |
| GALLAGHER, and DOES 1-25, ) | CLAUSE OF THE U.S. |
| inclusive, ) | CONSTITUTION (individual |
| ) | capacity); |
| Defendants. ) | **3.** CONSPIRACY TO INTERFERE |
| ) | WITH CIVIL RIGHTS; |
| ) | **4.** VIOLATION OF FREE SPEECH |
| ) | PROVISION OF THE ARIZONA |
| ) | CONSTITUTION; |
| ) | **5.** WRONGFUL DISCHARGE; and |
| _____ ) | **6.** BREACH OF DUTY OF GOOD |
| | FAITH AND FAIR DEALING |

**[Jury Trial Demanded]**

///

///

## INTRODUCTION

The City of Flagstaff fired a librarian for his refusal to endorse a controversial political movement, and for expressing his personal political views related thereto. The librarian communicated these views on a private email list-serve of a private charity supporting librarians. The librarian objected to the email service straying from its a-political focus, and objected to the viewpoint of the prior email. The library's response was to fire the librarian. Prior to all this, the fired librarian spent nearly a decade as a librarian serving the community of Flagstaff, and Flagstaff fired him because they didn't like his unwillingness to assent to their preferred political viewpoint and the politicization of private organizations intended to serve libraries. This suit follows.

## PARTIES

1.      Plaintiff RON KELLEY ("Kelley") is an individual, a citizen of the United States and a resident of the City of Flagstaff, in the County of Coconino, Arizona.

2.      Defendant FLAGSTAFF CITY-COCONINO COUNTY PUBLIC LIBRARY ("Flagstaff Library"), is a municipal entity that is located in the City of Flagstaff, in the County of Coconino, Arizona.

3.      Defendant HEIDI HANSEN ("Hansen"), holds herself out as "Economic Vitality Director" of defendant Flagstaff Library. At all times relevant to this action, Hansen was acting within the scope of her employment and under color of the laws of the County of Coconino.

4.      Defendant GREG CLIFTON ("Clifton"), holds himself out as the "City Manager" of defendant Flagstaff Library. At all times relevant to this action, Clifton was acting within the scope of his employment and under color of the laws of the County of Coconino.

5.      Defendant JEANIE GALLAGHER ("Gallagher"), holds herself out as the "Director of Human Resources" of defendant Flagstaff Library. At all times relevant to this action, Gallagher was acting within the scope of his employment and under color of the laws of the County of Coconino.

6.      Plaintiff is not presently aware of the true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive, and therefore sues said defendants by such fictitious names. DOES 1 through 25 may be natural persons, artificial persons or entities. Plaintiff is informed and believes and thereon alleges that each of the fictitiously-named defendants are responsible legally in some manner for the acts, conduct, omissions and events referred to herein, causing irreparable harm thereby to Plaintiff, as alleged herein.

7.      Plaintiff is informed and believes and thereon alleges that each defendant named herein, acted at all times relevant herein as the agent, servant, employee, supervisor, co-venturer, subsidiary, and/or corporate-parent of each of the remaining defendants. Plaintiff further alleges that the acts or omissions of any agent or employee of defendant(s) was done within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, subsidiary, and/or corporate-parent relationship. Plaintiff will seek leave to amend this complaint to allege their true names and capacities when the same has been ascertained.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over the subject matter of this dispute pursuant to 28 United States Code ("U.S.C.") Sections 1331 and 1343(a)(3), as this is an action to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States. Plaintiff seeks remedies under 42 U.S.C. §§ 1983, 1985 and 1988.

9.      Plaintiff's claims for declaratory relief are authorized by 42 U.S.C. §§ 1983, 28 U.S.C. §§ 2201 and 2202, Rule 57 of the Federal Rules of Civil Procedure ("FRCP"), and the general legal and equitable powers of this Court.

10.     This Court has supplemental jurisdiction over any pendent state claim(s) pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District under 28 U.S.C. §1391(b), because all defendants named herein reside or are found, or have agents, and transact business in this judicial district. Further, said defendants' acts in violation of the laws of the United States and the U.S. Constitution have arisen in this judicial district.

## **FACTS**

12.     Kelley was hired by the Flagstaff Library on or about 2011. Over the course of the ensuing nine years, Kelley acted as librarian responsible for organizing large volumes of books, works and other records.

13.     The Association of Bookmobile and Outreach Services (the "ABOS"), is a 501(c)(3) nonprofit organization which describes itself as follows: "The Association of Bookmobile and Outreach Services is comprised of libraries of all types and sizes. Library administrators, support staff, library staff, governmental officials, trustees, friends of libraries, and professionals from other fields comprise this movement."[1] The ABOS is located at 1190 Meramec Station Road, Suite 207, Ballwin, MO 63021.[2] The ABOS has no organizational nexus, formal or otherwise, with defendant Flagstaff Library. Defendants Hansen, Clifton and

---

[1] https://abos-outreach.com/
[2] https://abos-outreach.com/contact-us

Gallagher have no affiliation, formal or otherwise, with the ABOS.

14.    The ABOS is an affiliate of the American Library Association (the "ALA"). The ALA

describes itself as: "the oldest and largest library association in the world ...Founded on

October 6, 1876 during the Centennial Exposition in Philadelphia." The ALA's stated mission

is: "to provide leadership for the development, promotion and improvement of library and

information services and the profession of librarianship in order to enhance learning and ensure

access to information for all."[3] The central offices of the ALA are located at 225 N Michigan

Ave., Suite 1300, Chicago, IL 60601.[4] The ALA has no organizational nexus, formal or

otherwise, with defendant Flagstaff Library. Defendants Hansen, Clifton and Gallagher have

no affiliation, formal or otherwise, with the ALA.

15.    On or about June 8, 2020, an email was sent by the ABOS by way of a Google Group

list-serve to all of its subscribers (the "List-Serve")[5], that is attached to this Complaint as

"Exhibit A". The subject heading of the List-Serve was titled: "[ABOS-Outreach] Fwd: ALA

Libraries Respond – Black Lives Matter". The content of the List-Serve email was as follows:

> "From ODLOS....Good afternoon,
>
> Since 2016, ODLOS has maintained the <u>Libraries Respond</u> page –a resource for
> addressing current social justice issues. Our newest installment is <u>Libraries
> Respond –Black Lives Matter</u>.
>
> The library profession suffers from a persistent lack of racial and ethnic diversity

---

[3] http://www.ala.org/aboutala/

[4] http://www.ala.org/aboutala/governance

[5] A list-serve is a platform for generating discussions about a topic among a group of people via email. The most typical means is through an electronic mailing list software, that allows the sender to send one email to all subscribers to the list, while allowing any given subscriber to see the email addresses to which the other subscribers are sent. Typically, any subscriber that wishes to add to the discussion spawned by the originating email, does so by replying all, and thereby perpetuates an ongoing discussion on the underlying topic amongst all subscribers to the list-serve. (https://en.wikipedia.org/wiki/LISTSERV)

that shows few signs of improving. In 2018, just 6.8 percent of librarians identified as Black or African American. Many people are feeling helpless, but there are many ways we can center the voices and experiences of Black library workers and the Black community, support the broader Black Lives Matter movement, fight against police violence, and further the cause of racial justice.

This resource provides key definitions and concrete tools for library workers on how they can be involved in the Black Lives Matter movement, from resources on educating yourself to critically examining library policies.

Please do not hesitate to get in touch (diversity@ala.org) if you have any questions or resources you recommend for this page.

Best, Amber

Amber Hayes
Outreach and Communications Program Officer, Office for Diversity, Literacy and Outreach Services
American Library Association
225 N Michigan Ave
Suite 1300
Chicago, IL 60601
P: 312-280-2140 or 800-545-2433 ext. 2140
E: ahayes@ala.orgwww.ala.org/diversity"

16.     On or about June 9, 2020, Kelley responded to the List-Serve email, that is attached to

this Complaint as "Exhibit B", setting forth as follows:

"ABOS Friends and Associates,

The propagandistic posting below, apparently forwarded from the current president of ABOS, about the Black Lives Matter organization is extremely unwise. Overt politicization of this list-serv will destroy this forum. Do members want a political battlefield, strong-armed by ALA-sanctioned propaganda, or an open exchange forum for outreach improvement? Or, truly, in the heart of our festering Culture Wars, are only dictated political perspectives permitted about library outreach programs in these discussions? Such ham-handed, totalitarian directives are apparently endorsed by ABOS, as well as the ALA, to the obvious exclusion of other views. Will this ABOS discussion group kick out (censor) individuals who advocate for a non-political forum?

It's an old adage that is increasingly under attack: Libraries should provide aid and information to ALL who seek it and not function as a politicized, prejudicial Advocacy Factory.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Diversity? Inclusion? 82% of American librarians are women. Why no interest in gender diversity in this genre of workplace? Or is the presumption here that of the usual "social justice" template, that all males are innately oppressors, naturally affluent, born cursed, and they don't like "women's work?" Or are men relatively illiterate? Which stereotype suffices to righteously ignore this glaring stat about women's dominance of the library world?

Here, below, are some Black authors with alternative perspectives on the Black Lives Matter movement, and/or beyond. I've read/viewed some of this material, but not all of it. I formally endorse nothing, I do not know all of which every individual advocates, but recognize that the fundamental purpose of a library is to provide a broad range of information/materials for ALL patrons, and a wide realm of fact and opinion, not solely bending to a favorite, dictated ideological line. A much-needed "diversity of viewpoints," perhaps the greatest diversity of them all, cuts across race, class, and gender.

Libraries –and this discussion forum --should remain apolitical. ALA --and ABOS, apparently now in tow by the neck --adheres to one-dimensional thought in heralding a single political view while implicitly dismissing/censoring other perspectives, something akin to Bradbury's Fahrenheit 451, or Orwell's masterpieces. Ignoring some strains of thought --and relentlessly highlighting, and overtly advocating for, others --is a discrete form of censorship, as any librarian knows in collection development.

Library workers are supposed to be informed. They ought to be readers, and open wide the doors to ALL visitors, not shut –or narrow --them.

And a librarians' job should be to serve their communities' respective needs, not to manipulate information and tell people what to think.

The ALA email below solicits activism in the Black Lives Matter movement and offers "resources on educating yourself." In this regard, do you think that this grossly prejudicial email would dare to encompass the following?

A few ALTERNATIVE BLACK VOICES, with samples of their works [list of alternative works omitted] …

Of course there are others throughout ABOS, and beyond, who recognize the truths here I state. But we live in a New World climate of fear and intimidation wherein objectors to ardent propaganda are bullied into silence. Few speak out to resist for concern of the inevitable avalanche that will be wrought upon them: systemic smears (see Sheryl Atkinson's The Smear: How Shady Political Operatives and Fake News Control What You See, What You Think, and How

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

You Vote), censorship, threats, intimidation, and attacks upon views that don't tow the "correct" Party Line –the one that dominates when all others are sufficiently purged.

George Floyd endured an atrocity and justice will be served. But there are many commentators, with an abundance of facts and statistics about crime, Black and White alike, who argue that the "systemic racism" charge is bogus. Read and listen to voices other than the ones that are Hell-bent upon insulating us all from our abilities to make up our own minds –and that is only WHEN a full range of information is provided for a genuinely informed democracy to function.

I remind you that, amidst the current --literally riotous --hysteria and our collective memory lapse, this used to be the purpose of a library.

Keep politics out of the workplace. Please go riot on your own time."

17.     On or about July 10, 2020, defendant Hansen authored a letter titled "Notice for Recommendation for Dismissal and Pre-Determination Meeting" (the "Notice for Recommendation") that was sent to Kelley. The Notice for Recommendation is attached to this Complaint as "Exhibit C".

18.     The Notice for Recommendation advised Kelley that a "Pre-Determination meeting" had been scheduled on or about July 16, 2020 via teleconference, with defendants Clifton and Gallagher.

19.     The Notice for Recommendation stated that Kelley's dismissal recommendation was based upon the content of Kelley's email reply to the List-Serve email on June 9, 2020 (Exhibit B above), quoting numerous excerpts from the content of Kelley's reply therein.

20.     The Notice for Recommendation further stated: "Library leadership was contacted following this post expressing concern over your content and further stated, 'This is troubling, angering, and quite frankly not how I would think you want your library reflected within the greater library community."

21.     On or about July 16, 2020, a "Pre-Determination meeting" between Kelley and

defendants Clifton and Gallagher was held telephonically. Mr. Kelley's emails of June 9 and 15, 2020 set forth above, and the City of Flagstaff's reaction to those emails, was discussed at the Pre-Determination meeting on July 16, 2020.

22.     On or about July 28, 2020, defendant Clifton authored a letter titled "Recommendation for Dismissal" (the "Dismissal Letter") that was sent to Kelley via certified mail. Defendant Gallagher was "cc'd" on the Dismissal Letter, which is attached to this complaint as "Exhibit D".

23.     The Dismissal Letter repeated the allegations in the Recommendation for Dismissal, memorialized the Pre-Determination meeting on July 16, 20202, and went on to recommend Kelley's termination based upon "violation of the City's Ethics Policy". The Dismissal Letter further stated: "in his recent June 15th email [which represents a follow-up communication in response to criticism received by the Flagstaff Library subsequent to the June 9th communication], Mr. Kelley was unprofessionally insulting and dismissive of commentators who took issue with his post and directed people to his personal email." (Exhibit D, pg. 1, para. 4)

24.     The Dismissal Letter also added that: "the recommendation of termination is also predicated upon previous instances involving communications by Mr. Kelley that were found to be lacking in professionalism and respect. (*Id*., at pg. 1, para. 3)

25.     These so-called "previous instances" involved written follow-ups by Mr. Kelley's supervisors and were appended to the Dismissal Letter.

26.     The "previous instances" referenced in the Dismissal Letter, related to two grievances submitted by Kelley to the City regarding disputes with former supervisors of Kelley. The first grievance was resolved in Kelley's favor, and the second one was pending when Kelley was

terminated.

27.     The Dismissal Letter concluded by stating: "The employment termination of Mr.

Kelley, who is currently on paid administrative leave, will be effective upon the delivery of this

finding to him." (Exhibit D, pg. 2, para. 2) The Dismissal Letter was signed by defendant

Clifton, with defendant Gallagher cc'd at the bottom. (*Ibid.*)

## FIRST CAUSE OF ACTION - VIOLATION OF KELLEY'S RIGHT TO FREE SPEECH BY DEFENDANT ACTING IN ITS OFFICIAL CAPACITY

### [against Defendant Flagstaff Library]

28.     Plaintiff hereby incorporates by reference the allegations contained in the preceding

paragraphs as if fully set forth herein.

29.     The First Amendment to the United States Constitution provides "Congress shall make

no law … abridging the freedom of speech, or of the press; or the right of the people peaceably

to assemble, and to petition the Government for a redress of grievances."

30.     The First Amendment's guarantees of freedom of speech, freedom of the press, freedom

of assembly, and freedom to petition for redress of grievances are applied to the states, their

officials and their political subdivisions under the Fourteenth Amendment to the United States

Constitution.

31.     42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance,

regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress,"

32.     The actions alleged herein were taken by defendants Hansen, Clifton and Gallagher, acting in their official capacities and under color of municipal law. Said actions were pursuant to the enforcement of the municipal policy and/or custom of Flagstaff Library, and/or in conformity to the official policy, custom or practice of Flagstaff Library, to abridge free speech of its employees even where said speech was expressed outside the context of the employee's work duties.

33.     The conduct alleged herein, deprived Kelley of his right to unabridged freedom of speech, in that Kelley was terminated from his employment by Flagstaff Library, because of Kelley's expression of speech in his reply to the List Serve emails set forth herein.

34.     Kelley suffered compensatory damages as a result of the conduct alleged herein, including but not limited to loss of earnings as of his termination on or about July 28, 2020, loss of future and prospective earnings, and general damages that included humiliation, damage to Kelley's reputation and character in the community and profession, and emotional and mental distress.

35.     There is a causal link between the conduct of the defendants named herein, and the damages suffered by Kelley. In addition, Kelley's damages were the reasonably foreseeable consequences of the acts and/or omissions of the defendants.

**SECOND CAUSE OF ACTION - VIOLATION OF KELLEY'S RIGHT TO FREE SPEECH BY DEFENDANTS IN THEIR INDIVIDUAL CAPACITY**

**[against Defendants Hansen, Clifton and Gallagher]**

36.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

37.     The actions alleged herein were taken by defendants Hansen, Clifton and Gallagher

acting as municipal officials under color of municipal law. Said actions by defendants Hansen, Clifton and Gallagher deprived Kelley of his right to unabridged freedom of speech, in that Kelley was terminated from his employment by Flagstaff Library, because of Kelley's expression of speech in his reply to the List Serve emails set forth herein.

38.     Kelley suffered compensatory damages as a result of the conduct of defendants Hansen, Clifton and Gallagher, including but not limited to loss of earnings as of his termination on or about July 28, 2020, loss of future and prospective earnings, and general damages that included humiliation, damage to Kelley's character in the community and profession, and emotional and mental distress.

39.     There is a causal link between the conduct of defendants Hansen, Clifton and Gallagher, and the damages suffered by Kelley. In addition, Kelley's damages were the reasonably foreseeable consequences of the acts and/or omissions of said defendants.

40.     Defendants Hansen, Clifton and Gallagher acted with evil motive or intent and/or with reckless or callous indifference, to Kelley's civil rights in their conduct alleged herein, meriting an award of punitive damages against said defendants pursuant to 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

### [against all Defendants]

41.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

42.     42 U.S.C. § 1985(3), provides for a private cause of action: "It two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

immunities under the laws;"

43.     The defendants named herein, entered into a conspiracy for the purpose of depriving, either directly or indirectly, Kelley from the equal protection of the law and/or the equal privileges and immunities under the laws, specifically Kelley's exercise of his free speech rights.

44.     Said defendants performed an act(s) in furtherance of the conspiracy by retaliating against Kelley by terminating him from his employment with the Flagstaff Library, because of Kelley's expression of speech in his reply to the List Serve emails set forth herein.

45.     Kelley suffered compensatory damages as a result of the conduct alleged herein, including but not limited to loss of earnings as of his termination on or about July 28, 2020, loss of future and prospective earnings, and general damages that included humiliation, damage to Kelley's reputation and character in the community and profession, and emotional and mental distress.

**FOURTH CAUSE OF ACTION - VIOLATION OF KELLEY'S FREE SPEECH RIGHTS UNDER THE ARIZONA CONSTITUTION**

**[against all Defendants]**

46.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

47.     Article II, Section 6 of the Arizona Constitution provides that: "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." The Supreme Court of Arizona has held that the right to freely speak, write and publish under the Arizona Constitution has: "greater scope than the first amendment [of the U.S. Constitution]". (*Mountain Sates Tel. & Tel. Co. v. Arizona Corp. Com'n*, 160 Ariz. 350, 354

(1989).)

48.      The actions of the defendants named in this complaint violated Kelley's right to freely speak, write and publish under the Arizona Constitution, in that said actions deprived Kelley of his right to unabridged freedom of speech, in that Kelley was terminated from his employment by Flagstaff Library, because of Kelley's expression of speech in his reply to the List Serve emails set forth herein.

49.      Kelley suffered compensatory damages as a result of the conduct of the defendants alleged herein, including but not limited to loss of earnings as of his termination on or about July 28, 2020, loss of future and prospective earnings, and general damages that included humiliation, damage to Kelley's character in the community and profession, and emotional and mental distress.

50.      There is a causal link between the conduct of the defendants, and the damages suffered by Kelley. In addition, Kelley's damages were the reasonably foreseeable consequences of the acts and/or omissions of said defendants.

## FIFTH CAUSE OF ACTION – WRONGFUL DISCHARGE

### [against all Defendants]

51.      Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

52.      Kelley was hired by the Flagstaff Library on or about 2011, pursuant to an oral agreement that included that Kelley's employment would not be terminated except upon good cause shown by the defendants named herein.

53.      The acts of the defendants named herein constituted wrongful discharge of Kelley from

14

his employment as librarian of Flagstaff Library, by depriving Kelley of his constitutional right to unabridged freedom of speech, in that Kelley was terminated from his employment by Flagstaff Library because of Kelley's expression of speech in his reply to the List Serve emails as set forth herein.

54.     In addition, in *Wagenseller v. Scottsdale memorial Hospital,* 147 Ariz. 370, 376-381 (1985), the Arizona Supreme Court adopted the "public policy exception" to the employment-at-will doctrine, holding: "Firing for bad cause – one against public policy articulated by constitutional, statutory, or decisional law – is not a right inherent in the at-will contract, or in any other contract, even if expressly provided [citing 1A A. Corbin, Contracts § 6l; 6A A. Corbin, Contracts §§ 1363-75 (1962)]."

55.     Alternatively, the acts of the defendants named herein constituted wrongful discharge of Kelley from his employment as librarian of Flagstaff Library, because the motive of the defendants, as well as the stated grounds for Kelley's termination, were by reason of Kelley's expression of his right of free speech under the U.S. and Arizona Constitutions, and thereby against public policy in violation of the "public policy exception" to the employment-at-will doctrine under Arizona law.

56.     As a result of the conduct of the defendants named herein, Kelley is entitled to recover as compensatory damages, including but not limited to loss of earnings as of his termination on or about July 28, 2020, and loss of future and prospective earnings.

///

///

**SIXTH CAUSE OF ACTION – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

**[against all Defendants]**

57.     Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

58.     Every employment agreement contains a duty to act fairly and in good faith. This duty is implied by law and has the same force as if it were set forth in writing. This duty requires that neither party do anything that prevents the other from receiving the benefits of the agreement.

59.     The defendants named herein breached this duty to act fairly and in good faith, by depriving Kelley of his constitutional right to unabridged freedom of speech, in that Kelley was terminated from his employment by Flagstaff Library, because of Kelley's expression of speech in his reply to the List Serve emails as set forth herein.

60.     As a result of the conduct of the defendants named herein, Kelley is entitled to recover as damages those benefits of the agreement that were denied, including but not limited to loss of earnings as of his termination on or about July 28, 2020, and loss of future and prospective earnings.

///

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A.  For monetary damages pursuant to 42 U.S.C. § 1983, arising from the deprivation of Kelley's rights under the U.S. and Arizona Constitutions;

B.  For declaratory relief pursuant to 42 U.S.C. §§ 1983, 2201 and 2202 and FRCP Rule 57 and the general equitable powers of this Court, declaring that the termination of Kelley was wrongful and in violation of the First, Fifth and Fourteenth Amendments to the U.S. Constitution, as well as Article II, Section 6 of the Arizona Constitution;

C.  For punitive damages against defendants Hansen, Clifton and Gallagher pursuant to 42 U.S.C. § 1983;

D.  For an award Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and

E.  To grant such other and further relief as the Court deems just and proper.

Dated: July 21, 2021                    Respectfully submitted,

                                        BARNES LAW

                                        /s/ Derek A. Jordan
                                        _____
                                        Derek A. Jordan; Tennessee Bar No. 34299
                                        700 South Flower Street, Suite 1000
                                        Los Angeles, CA 90017
                                        Phone: (310) 510-6211
                                        Email: derekjordan@barneslawllp.com
                                        Attorneys for Plaintiff RON KELLEY

# EXHIBIT A

**From:** abos-outreach@googlegroups.com <abos-outreach@googlegroups.com> on behalf of President ABOS <president@abos-outreach.com>
**Sent:** Monday, June 8, 2020 1:48 PM
**To:** ABOS-Outreach Google Group (Listserve)
**Subject:** [ABOS-Outreach] Fwd: ALA Libraries Respond - Black Lives Matter

## From ODLOS....

Good afternoon,

Since 2016, ODLOS has maintained the Libraries Respond page – a resource for addressing current social justice issues. Our newest installment is Libraries Respond – Black Lives Matter.

The library profession suffers from a persistent lack of racial and ethnic diversity that shows few signs of improving. In 2018, just 6.8 percent of librarians identified as Black or African American. Many people are feeling helpless, but there are many ways we can center the voices and experiences of Black library workers and the Black community, support the broader Black Lives Matter movement, fight against police violence, and further the cause of racial justice.

This resource provides key definitions and concrete tools for library workers on how they can be involved in the Black Lives Matter movement, from resources on educating yourself to critically examining library policies.

Please do not hesitate to get in touch (diversity@ala.org) if you have any questions or resources you recommend for this page.

Best,
Amber

Amber Hayes
Outreach and Communications Program Officer, Office for Diversity, Literacy and Outreach Services
American Library Association
225 N Michigan Ave
Suite 1300
Chicago, IL 60601
P: 312-280-2140 or 800-545-2433 ext. 2140
E: ahayes@ala.org
www.ala.org/diversity

*Pronouns: She, Her, and Hers*

# EXHIBIT B

abos-outreach@googlegroups.com
on behalf of
Ron Kelley <RKelley@flagstaffaz.gov>
Tue 6/9/2020 8:13 AM
To:
President ABOS <president@abos-outreach.com>;
ABOS-Outreach Google Group (Listserve) <abos-outreach@googlegroups.com>;


ABOS Friends and Associates,

The propagandistic posting below, apparently forwarded from the current president of ABOS, about the Black Lives Matter organization is extremely unwise. Overt politicization of this list-serv will destroy this forum. Do members want a political battlefield, strong-armed by ALA-sanctioned propaganda, or an open exchange forum for outreach improvement? Or, truly, in the heart of our festering Culture Wars, are only dictated political perspectives permitted about library outreach programs in these discussions? Such ham-handed, totalitarian directives are apparently _endorsed_ by ABOS, as well as the ALA, to the obvious exclusion of other views. Will this ABOS discussion group kick out (censor) individuals who advocate for a non-political forum?

It's an old adage that is increasingly under attack: Libraries should provide aid and information to ALL who seek it and not function as a politicized, prejudicial Advocacy Factory.

Diversity? Inclusion? 82% of American librarians are women. Why no interest in gender diversity in this genre of workplace? Or is the presumption here that of the usual "social justice" template, that all males are innately oppressors, naturally affluent, born cursed, and they don't like "women's work?" Or are men relatively illiterate? Which stereotype suffices to righteously ignore this glaring stat about women's dominance of the library world?

Here, below, are some Black authors with alternative perspectives on the Black Lives Matter movement, and/or beyond. I've read/viewed some of this material, but not all of it. I formally endorse nothing, I do not know all of which every individual advocates, but recognize that the fundamental purpose of a library is to provide a broad range of information/materials for ALL patrons, and a wide realm of fact and opinion, not solely bending to a favorite, dictated ideological line. A much-needed "diversity of viewpoints," perhaps the greatest diversity of them all, cuts across race, class, and gender.

Libraries – and this discussion forum -- should remain apolitical. ALA -- and ABOS, apparently now in tow by the neck -- adheres to one-dimensional thought in heralding a single political view while implicitly dismissing/censoring other perspectives, something akin to Bradbury's Fahrenheit 451, or Orwell's masterpieces. Ignoring some strains of thought -- and relentlessly highlighting, and overtly advocating for, others -- is a discrete form of censorship, as any librarian knows in collection development.

Library workers are supposed to be informed. They ought to be readers, and open wide the doors to ALL visitors, not shut – or narrow -- them.

And a librarians' job should be to serve their communities' respective needs, not to manipulate information and <u>tell people what to think</u>.

The ALA email below solicits activism in the Black Lives Matter movement and offers "resources on educating yourself." In this regard, do you think that this grossly prejudicial email would dare to encompass the following?

**A few ALTERNATIVE BLACK VOICES, with samples of their works:**

Taleeb Starkes: *Black Lies Matter: Why Lies Matter to the Race Grievance Industry*

Candace Owens: *Blackout: How Black Americans Can Make Its Second Escape from the Democrat Plantation*

Jesse Lee Peterson: host of the video program "*The Fallen State*." His video interview with <u>members of Black Lives Matter</u> is, by his own word, "amazing."

David Clarke: *Cop under Fire: Moving beyond Hashtags of Race, Crime and Politics for a Better America*

Keith B. Richburg: *Out of America: A Black Man Confronts Africa*

Erik Rush: *Negrophilia: From Slave Block to Pedestal – America's Racial Obsession*

Jason L. Riley: Please Stop Helping Us: How Liberals Make It Harder for Blacks to Succeed

Larry Elder. (<u>You Tube Interview</u>: *Black Lives Matter, Racism, pt. 2* -- A Conservative Perspective)
Conti, Faryna, Stetson: *Black and Right: The Bold New Voice of Black Conservatives in America*

There are many more alternative Black perspectives, but they are not popularly heralded by those with vested ideological devotion to Marxism, post-Modernism, and/or, generally, the "social justice" narratives of the political Left, i.e. the likes of the American Library Association. The ALA has long since failed – by conscious political design – to be an objective arbiter of what is or is not "fake news." (See, for example, its endorsement of the prejudicial and partisan ideology of "critical librarianship," which <u>rejects the aims of an objective neutrality</u>. Examine also what brand of individual speaks at the ALA's conventions, both national and sectional. And who/what is forbidden its forum.)

_____

For a broader critical perspective about the "Identity Politics" avalanche in our times, see, for example:

Heather MacDonald: *The War on Cops*

Heather MacDonald: *The Diversity Delusion*

Bradley Campbell and Jason Manning: *The Rise of Victimhood Culture: Microaggressions, Safe Spaces, and the New Culture Wars*
Greg Lukianoff and Jonathan Haidt: *The Coddling of the American Mind: How Good Intentions and Bad Ideas Are Setting Up a Generation for Failure*

Michael Rectenwald. *Springtime for Snowflakes: Social Justice and Its Postmodern Parentage*

Jordan Peterson. Peterson's *12 Rules for Life* was a recent bestseller, but he catapulted to fame for resisting "politically correct" mandates in Canada. Peterson is prolific throughout the internet, but one of his most famous interviews was [with "progressive" journalist Cathy Newman](#).

Other valuable reading, per the new <u>enforced</u> political orthodoxies that are sweeping our society in the bitter Culture Wars, must include:

[The Heterodox Academy](#)

This is an online academic organization with a membership of nearly 4,000 scholars, who are concerned about "enhancing viewpoint diversity," i.e., breaking the totalitarian tone metastasizing throughout university culture, including censorial intolerance to alternative perspectives, and the enforcement of groupthink shepherding.


_____

Of course there are others throughout ABOS, and beyond, who recognize the truths here I state. But we live in a New World climate of fear and intimidation wherein objectors to ardent propaganda are bullied into silence. Few speak out to resist for concern of the inevitable avalanche that will be wrought upon them: systemic smears (see Sheryl Atkinson's *The Smear: How Shady Political Operatives and Fake News Control What You See, What You Think, and How You Vote*), censorship, threats, intimidation, and attacks upon views that don't tow the "correct" Party Line – the one that dominates when all others are sufficiently purged.

George Floyd endured an atrocity and justice will be served. But there are many commentators, with an abundance of facts and statistics about crime, Black and White alike, who argue that the "systemic racism" charge is bogus. Read and listen to voices other than the ones that are

Hell-bent upon insulating us all from our abilities to make up our own minds – and that is only WHEN a full range of information is provided for a genuinely informed democracy to function.

I remind you that, amidst the current -- literally riotous -- hysteria and our collective memory lapse, this used to be the purpose of a library.

Keep politics out of the workplace. Please go riot on your own time.

# EXHIBIT C

FLAGSTAFF CITY-COCONINO COUNTY PUBLIC LIBRARY

300 West Aspen Avenue   Flagstaff, Arizona 86001   (928) 213-2331

To:     Ron Kelley, Librarian
From:   Heidi Hansen, Economic Vitality Director
Cc:     Jared Tolman, Library Director, Will Ascurza, Deputy Library Director
Date:   July 10, 2020
RE:     Notice for Recommendation for Dismissal and Pre-Determination Meeting

This notice is to inform you of our recommendation that you be dismissed from your position as Librarian with the City of Flagstaff effective immediately.

Per the Employee Handbook of Regulations for the City of Flagstaff (1-40-120 *Dismissal*, Attachment 1, a Pre-Determination meeting has been scheduled with you, a Human Resource representative and Greg Clifton, City Manager on July 16, 2020 from 12 Noon – 1:00 p.m. Pursuant to the current closure of City Hall due to the COVID-19 pandemic, this meeting will be held via teleconference.  Please provide a telephone number where we may contact you at the appointed time to join the meeting.  During this meeting you may present information you wish to be considered with respect to this recommendation for dismissal.

**Reason for Dismissal**

Violation of the City of Flagstaff City Employee Directives No. 4-043, *Ethics Policy*, Attachment 2. On June 8, 2020 the American Library Association's Office for Diversity, Literacy and Outreach Services made a post on the Association of Bookmobile and Outreach Services (ABOS) listserv, informing members of a resource it compiled for addressing current social justice issues titled "Libraries Respond–Black Lives Matter." On June 9, 2020 at 11:14 a.m. you sent a response regarding the referenced resource.  Therein you described the communication as "propagandistic" and called the discussion a "ham-handed, totalitarian directive".  You also provided links to several authors that have offered "alternative perspectives on the Black Lives Matter movement" and indicated that these authors argue that "the systemic racism charge is bogus" and further told the listserv in closing "please go riot on your own time." Your communication is inconsistent with Section 2(B)(2) and 3(H) of the City's Ethics Policy. Library leadership was contacted following this post expressing concern over your content and further stated, "This is troubling, angering, and quite frankly not how I would think you want your library reflected within the greater library community."

On June 15, 2020 at 8:44 a.m. you sent an email to the ABOS President and ABOS listserv responding to criticism you had received from other listserv members to your first message.  In this message you threatened to sue the moderator of the listserv if your post was censored and threatened to sue other individuals for libel and slander for their responses.  You then promoted your own personal website as a place to express views that would not be censored. This post was blocked by the listserv due to their determination of inappropriate and unprofessional content.  The ABOS President notified Library Leadership forwarding the content and stating it would not be posted. Your communication again is inconsistent with Section 2(B) (2) and 3(H) of the City's Ethics Policy.

You have been counseled multiple times regarding the expectation of professional



FLAGSTAFF CITY-COCONINO COUNTY PUBLIC LIBRARY

300 West Aspen Avenue   Flagstaff, Arizona 86001   (928) 213-2331

communication, including the following:

1. August 5, 2016 (Attachment 3).  Among other expectations that "all comments, emails or communications must be respectful".

2. August 2, 2019 (Attachment 4).  Among other expectations "being professional in all emails".

Your June 9 and June 15 communications violate the directives you have previously received and constitute insubordination.

As Bookmobile Librarian, for many people, you are the only person with whom the public may interact in connection with the Flagstaff Library.  For the public to have confidence in the value of the public library system, the City must be confident that its librarians will be professional, courteous and respectful at all times and through all communications. Based on your June 9 and June 15 communications, the City cannot be assured that you will meet its standards and expectations for civility and professionalism. Therefore, you are being recommended for dismissal.

Arizona Relay Service 7-1-1

# EXHIBIT D



# City of Flagstaff

July 28, 2020

Mr. Ron Kelley
6300 N. Pinon Road
Flagstaff, AZ 86004

Via Certified Mail

RE:  Recommendation for Dismissal

On July 10, 2020, Ron Kelley, Librarian for the City of Flagstaff, was provided a written Notice for Dismissal and Pre-Determination Meeting ("Notice"). The Notice, and all attachments or references associated therewith, is incorporated into this Finding by reference.

The Notice provides a recommended termination of Mr. Kelley's employment with the City. The basis for the recommendation focuses upon communications from Mr. Kelley, in his capacity as Bookmobile Librarian, that occurred on June 9th and June 15th of this year. These communications, in response to a post by the American Library Association's Office for Diversity, Literacy and Outreach Services on Association of Bookmobile and Outreach Services (ABOS) listserv, are described in the Notice. The June 9th communication was the initial response by Mr. Kelley to the listserv, and the June 15th post represents a follow-up communication in response to criticism received by the Flagstaff Library subsequent to the June 9th communication.

The recommended termination is largely based upon violation of the City's Ethics Policy, as cited in the Notice. In addition to the two recent communications noted above, the recommendation of termination is also predicated upon previous instances involving communications by Mr. Kelley that were found to be lacking in professionalism and respect. These previous instances involved written follow-ups by Mr. Kelley's supervisors and are appended to the Notice.

Underlying all of these communications is a consistent presence of unprofessionalism and disrespect by Mr. Kelley. The communications were made in Mr. Kelley's capacity as a public employee. It is noted that in his recent June 15th email, Mr. Kelley was unprofessionally insulting and dismissive of commentators who took issue with his post and directed people to his personal email. In order for the public to have confidence in the value of the public library system, the City must ensure that its librarians will be professional, courteous and respectful to the patrons that are served. Mr. Kelley's insulting communication, directed at several library professionals, removes the confidence in the courtesy and professionalism he can show to the citizens of Flagstaff.

Mr. Kelley, pursuant to the Employee Handbook of Regulations for the City of Flagstaff, was accorded a Pre-Determination meeting with the Director of Human Resources and the undersigned City Manager,

211 West Aspen Avenue, Flagstaff, Arizona 86001
Main (928) 213-2000 • Arizona Relay Service 7-1-1 • www.flagstaff.az.gov

which occurred on July 16th, 2020.  During that meeting, Mr. Kelley embarked upon a narrative that involved a raised voice and a barrage of criticisms against the City organization.  The anger and forcefulness in his communication was evident.  At no time was any remorse for his previous actions expressed, nor was there any acceptance of the disrespectful nature of his communications.

The employment relationship between the City of Flagstaff and Mr. Kelley has come to an end.  The recommendations as provided in the Notice are determined to be well-grounded and are affirmed as such.  The employment termination of Mr. Kelley, who is currently on paid administrative leave, will be effective upon the delivery of this finding to him.

Digitally signed by
Greg Clifton
Date: 2020.07.29
08:53:50 -07'00'

Greg Clifton
City Manager


Cc: Jeanie Gallagher, HR Director